**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 15 Case |
| ENERGERA, INC. (F/K/A FRAC SHACK INC.), | § § § § | Case No. 26-90433 (ARP) |
| Debtor in a Foreign Proceeding. | § § § | (Joint Administration Requested) |
| In re: | § § § | Chapter 15 Case |
| ENERGERA AMERICA INC. (F/K/A FRAC SHACK AMERICA INC.), | § § § § | Case No. 26-90434 (ARP) |
| Debtor in a Foreign Proceeding. | § § § | (Joint Administration Requested) |
| In re: | § § § | Chapter 15 Case |
| SANDTINEL LLC, | § § § § | Case No. 26-90435 (ARP) |
| Debtor in a Foreign Proceeding. | § § § § | (Joint Administration Requested) |

**VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN PROCEEDING,
(II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND
(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Alvarez & Marsal Canada Inc., solely in its capacity as court-appointed receiver, manager, and authorized foreign representative ("Receiver" or "Foreign Representative") of Energera, Inc. (formerly known as Frac Shack, Inc.) ("Energera"); Energera America Inc. (formerly known as Frac Shack America Inc.) ("Energera America"); and Sandtinel LLC ("Sandtinel," and collectively

1

with Energera and Energera America, the "Debtors") pursuant to the *Consent Receivership Order* dated and pronounced on March 17, 2026 (the "Receivership Order")[1] was entered by the Court of King's Bench of Alberta in Judicial Centre of Edmonton, Alberta, Canada, Court File No. 2603-02889 (the "Canadian Court" and the "Canadian Proceeding"), pending under Canada's *Bankruptcy and Insolvency Act* ("BIA"), respectfully submits this chapter 15 verified petition (the "Verified Petition"; and together with the official form petition filed concurrently herewith, the "Petition") for recognition of the Canadian Proceeding pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code").  By its Petition, the Receiver requests (a) recognition of the Canadian Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding; (b) recognition of the Receiver as the foreign representative of the Debtors; and (c) relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

In support of the Petition, the Receiver has filed contemporaneously herewith the (a) *Declaration of Orest Konowalchuk in Support of (A) Verified Petition for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code and (B) Emergency Motion for Provisional Relief Pursuant to the Bankruptcy Code Section 1519* (the "Konowalchuk Declaration") and (b) *Declaration of Foreign Counsel* (the "Kashuba Declaration"; and together with the Konowalchuk Declaration, the "Supporting Declarations"), which are incorporated herein by reference.

---

[1] A certified copy of the Receivership Order is attached hereto as **Exhibit 1** and can also be downloaded free of charge at Alvarez & Marsal Canada Inc.'s website: https://www.alvarezandmarsal.com/Energera and is incorporated herein for all purposes. Energera International Inc. (formerly known as Frac Shack International Inc.) ("Energera International") is a Canadian entity that is also part of the Canadian Proceeding and subject to the Receivership Order, but is not a chapter 15 debtor.

## I.   PRELIMINARY STATEMENT

1.      The Debtors, along with affiliate Energera International, are members of an integrated, multinational energy technology group (collectively, the "Energera Group") headquartered in Spruce Grove, Alberta, Canada. The Energera Group carries on an energy technology business in the oilfield services industry that consists of two principal operating divisions: (a) the Frac Shack Division, which provides automated, self-contained fuel delivery systems for hydraulic fracturing operations, and (b) the Sandtinel Division, which provides advanced non-cyclonic sand separation and monitoring technologies. Specifically, Energera provides services across Canada (including Alberta and British Columbia); Energera America and Sandtinel provides services in numerous states within the United States, including Alaska, Colorado, Louisiana, New Mexico, North Dakota, Ohio, Pennsylvania, Texas, and Wyoming; and non-chapter 15 debtor Energera International provides services in Argentina. The Energera Group employs over 100 individuals with approximately half of its workforce based in Alberta.

2.      On March 17, 2026, the Canadian Court entered the Receivership Order, appointing the Receiver to take control over all the Debtors' current and future assets, undertakings, and properties of every nature and kind whatsoever, and wherever situated, pursuant to section 243(1) of the BIA. The Receivership Order was entered after the Canadian Court heard and considered competing applications: (a) the receivership application filed by Royal Bank of Canada ("RBC"), as administrative agent (the "Agent") for a syndicate of lenders (the "Syndicate"), and (b) a cross-application by the Debtors for an initial order under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA"). The Canadian Court granted the receivership and denied the CCAA application, finding that a BIA receivership was more appropriate in the circumstances.

3.      The Receivership Order provides the Receiver with broad powers analogous to those afforded to a chapter 7 trustee under the Bankruptcy Code. The Receivership order provides

the Receiver with control over the Debtors' assets and affairs, stays all actions against the Debtors and the Property, and authorizes the Receiver to seek recognition of the Receivership Order in foreign jurisdictions, including the United States. Because the Debtors have substantial assets and active operations in the United States — principally owned by (a) Energera and leased to Energera America, a Delaware corporation operating in approximately 13 states, and (b) Sandtinel, a Delaware limited liability company owning its own assets and operating in approximately 6 states — the Receiver files this Petition and seeks the protections afforded by chapter 15 of the Bankruptcy Code to facilitate the ongoing administration of the Canadian Proceeding.

## II.     RELIEF REQUESTED

4.     The Receiver requests entry of an order, substantially in the form attached hereto (the "Proposed Order"), (a) granting the Petition and recognizing the Canadian Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding, and granting all of the relief afforded to such proceedings, pursuant to sections 1517(a) and (b) and 1520 of the Bankruptcy Code; (b) recognizing the Receiver as the foreign representative of the Debtors; (c) granting additional relief pursuant to section 1521 of the Bankruptcy Code; and (d) granting such other relief as the Court deems just and proper.

## III.     JURISDICTION AND VENUE

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P).  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Petition to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. This chapter 15 case has been properly commenced pursuant to sections 1504 and 1509 of the Bankruptcy Code by the filing of a petition for recognition of the Canadian Proceeding under section 1515 of the Bankruptcy Code.

7. Venue is proper pursuant to 28 U.S.C. § 1410(3). Among other reasons, Energera, the parent company and lead debtor, has property and other interests throughout the United States, including in Alaska, Colorado, Louisiana, New Mexico, North Dakota, Ohio, Pennsylvania, Texas, and Wyoming. Energera America is party to litigation pending in the United States District Court for the Southern District of Texas and in District Court in multiple Texas counties, including in Harris County. The Debtors, by and through the Receiver, selected counsel located in Houston, Texas, in part because of its preexisting familiarity with counsel, this Court's extensive experience with chapter 15 proceedings, and interested parties' ease of access to the Court. Furthermore, the principal decision-makers for the Debtors, including the Receiver, are located in Canada.

8. The basis for the relief requested herein is sections 105(a), 362, 363, 1504, 1507, 1510, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## IV. RELEVANT BACKGROUND

### A. The Debtors' Business

9. Energera is a corporation incorporated under the laws of the Province of Alberta and is the parent company of the Energera Group. The Energera Group's corporate structure is as follows:

(a) Energera America is a Delaware corporation that serves as the primary holding entity for the Energera Group's United States operations. Energera America is registered to carry on operations in approximately 13 U.S. states. Energera America is a direct, wholly-owned subsidiary of Energera and a Borrower under the Credit Agreement.

(b)     Sandtinel is a Delaware limited liability company that is 100% owned by Energera America. Sandtinel is registered to carry on operations in approximately 6 U.S. states. Sandtinel is a guarantor under the Credit Agreement (defined below).

(c)     Energera also holds a controlling 51% equity interest in Frac Shack Sociedad Por Acciones Simplificada, an Argentine entity that is structurally excluded from the definition of "Loan Party" under the Credit Agreement. This entity is not part of these chapter 15 proceedings.

(d)     Energera International is federally incorporated under the laws of Canada and is extra-provincially registered in Alberta and British Columbia. Energera International is a direct, wholly-owned subsidiary of Energera and a Borrower under the Credit Agreement. This entity is not part of these chapter 15 proceedings.

(e)     Sand Separation Technologies Inc. (formerly known as 2233423 Alberta Ltd.), an Alberta corporation that was previously a 100% owned subsidiary of Energera and a co-borrower under prior credit agreements, was dissolved effective December 31, 2024, as part of a corporate streamlining initiative. As such, it is also not part of these chapter 15 proceedings.

10.     The Energera Group's core operations include the provision of automated, self-contained, and self-sufficient fuel delivery systems for hydraulic fracturing and the separation of solids from produced liquids with reduced methane emissions relative to competitors. The Energera Group's business comprises two principal operating divisions:

(a)     The Frac Shack Division provides automated hydraulic fracturing fueling solutions that support diesel, bi-fuel, and natural gas-powered frac fleets. These modular, self-contained, and fully mobile units facilitate the transition from traditional fuel sources to natural gas, significantly improving safety and environmental performance during pressure pumping operations.

(b)     The Sandtinel Division focuses on advanced non-cyclonic flowback sand separation and monitoring technologies. Its patented vessels are engineered to eliminate produced sand as wells are brought online, protecting downstream equipment, reducing downtime, and significantly reducing methane emissions during flowback.

11.     The Energera Group's operations are highly integrated and managed centrally from its global headquarters located in Spruce Grove, Alberta. The Energera Group maintains active operations and assets across Alberta, British Columbia, Alaska, Colorado, Louisiana, New Mexico, North Dakota, Ohio, Oklahoma, Pennsylvania, Texas, Utah, West Virginia, Wyoming, and Argentina.

12.     For the foreseeable future, the Receiver intends to maintain the going-concern Energera Group business and thus has retained substantially all of the Debtors' over 100 employees (of which approximately half are based in Alberta) to continue operations and assist with the Receivership proceedings and sale process, described further below.

13.     The Debtors have significant assets throughout the United States in the form of specialized oilfield equipment supporting the Energera (Frac Shack) and Sandtinel divisions. If not currently deployed to customer sites, the Debtors' United States assets are generally held at leased storage areas or yards in Pennsylvania, Texas, and Wyoming, among other locations. Certain assets are currently held for refurbishment and repair with a vendor in Monahans, Texas.

**B.     The Debtors' Creditors**

14.     Energera, Energera International, and Energera America (collectively, the "Borrowers") are the borrowers, and Sandtinel is a guarantor, under a Third Amended and Restated Credit Agreement dated June 28, 2024, as subsequently amended by a First Amending Agreement dated September 27, 2024 (as amended, the "Credit Agreement"). The Syndicate currently consists of RBC (as Agent), National Bank of Canada, ATB Financial, and Export Development Canada.

7

15. Pursuant to the Credit Agreement, the Syndicate made available: (a) a syndicated non-revolving term credit facility in the maximum principal amount of CAD $49,700,000, and (b) an operating facility in the maximum principal amount of CAD $7,500,000, with RBC as the sole operating lender. Both facilities were scheduled to mature on September 27, 2026.

16. To secure the obligations under the Credit Agreement, the Debtors granted various security interests (collectively, the "Security"), including guarantees, general security agreements, fixed and floating charge demand debentures, debenture pledge agreements, a pledge and security agreement, and a mortgage, assignment of leases and rents, security agreement, financing statement and fixture filing. The security interests were duly registered in the applicable personal property registries in Canada and the United States.

17. Beginning in 2024, the Energera Group encountered financial difficulties and began defaulting under the Credit Agreement. The defaults included failures to maintain required financial covenants—specifically, the ratio of consolidated net funded debt to EBITDA—as well as failures to provide timely financial statements, enter required interest rate hedging agreements, maintain minimum liquidity, and deliver required officer's certificates. The Agent issued reservation of rights letters to Energera on January 25, 2025, and November 19, 2025.

18. To provide time for the Energera Group to resolve its financial difficulties, the parties entered into a Forbearance Agreement on February 14, 2025, pursuant to which the Syndicate agreed to forbear from accelerating the obligations under the Credit Agreement and enforcing its rights against the Debtors. The Forbearance Agreement was subsequently amended five times—on March 31, May 15, May 22, and July 28, 2025, and finally on November 19, 2025—ultimately extending the forbearance period through January 31, 2026. As a condition of the Third Amending Agreement, the Debtors were required to execute a Consent

Receivership Order and covenant not to oppose a receivership application upon the expiry of the forbearance period.

19.     The forbearance period expired without renewal on January 31, 2026, after the Syndicate declined to grant any further extensions. As a result of the continuing defaults and the expiry of the forbearance period, the indebtedness became immediately due and payable. On February 6, 2026, with unanimous consent from the Syndicate, the Agent issued demands for full repayment and served Notices of Intention to Enforce Security under Section 244(1) of the BIA.

20.     As of February 2, 2026, the outstanding indebtedness owing by the Borrowers to the Syndicate under the Credit Agreement was CAD $39,061,058.27, plus accrued and accruing interest, costs, expenses, and other obligations.

21.     The Debtors have approximately seventy-eight (78) unsecured creditors, which generally includes suppliers, utility providers, governmental and taxing authorities, and other vendors, with unpaid trade balances totaling approximately $498,334 as of March 23, 2026. This total does not include any litigation claims against the Debtors that are presently unliquidated. A list of the known pending litigation involving the Debtors is attached hereto as **Exhibit 2**.

**C.      The Receiver**

22.     The Receiver is a corporation formed under the laws of Canada pursuant to the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, and consented to act as Receiver for the Debtors on February 9, 2026.  The Consent Receivership Order was agreed to by the Debtors on May 22, 2025, but was pronounced and came into effect on March 17, 2026.

**D.      Debtors' U.S. Bank Accounts and Intercompany Transactions**

23.     Insofar as known to the Receiver, the Debtors maintain four operating bank accounts (two maintained by Energera America, one by Sandtinel, and one by Energera)

(collectively, the "U.S. Accounts") at HSBC Bank USA NA ("HSBC") in the United States. The Receiver needs to ensure and retain access to the U.S. Accounts because, among other reasons, receivables from Energera America and Sandtinel are being deposited in the accounts during the Debtors' transition into receivership.  In the ordinary course of business, the Debtors engage in intercompany transactions with other members of Energera Group, and the Debtors' sources and uses of cash are directly or indirectly dependent upon the operations of the Energera Group.

**D.      The Canadian Receivership Proceeding**

24.      On March 17, 2026, the Canadian Court pronounced and made effective the Receivership Order pursuant to section 243(1) of the BIA and the Receivership Order was entered on March 18, 2026. Entry of the Receivership Order was the result of the Canadian Court's determination that a BIA receivership was more appropriate than a CCAA proceeding. In reaching this determination, Justice Feasby found, among other things, that (a) the Syndicate had been patient with the Debtors, having entered into a Forbearance Agreement that was amended five times over the course of approximately one year; (b) the Debtors had already been given the opportunity to run a sales and investment solicitation process during the forbearance period, which contacted 187 parties but failed to generate an offer sufficient to repay the Syndicate's indebtedness; (c) as a condition of the Third Amending Agreement to the Forbearance Agreement, the Debtors had executed a *Consent Receivership Order* and agreed not to oppose a receivership application; and (d) the additional costs of a CCAA proceeding were not justified where the Syndicate appeared to be the only stakeholder with a significant economic interest.

25.      The Receivership Order appointed the Receiver over the estates of the Debtors.  (Receivership Order ¶ 3).  The Receivership Order specifically authorizes the Receiver to act "as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada." (Receivership Order ¶ 32).  It empowers

and authorizes the Receiver to take various steps involving the property of the Debtors subject to the Canadian Proceeding. (Receivership Order ¶ 4).  The Receivership Order grants the Receiver access to, *inter alia*, all of the Debtors' books, records, contracts, and information. (Receivership Order ¶¶ 5-7).  Additionally, the Receivership Order imposes a stay of initiation or continuation of proceedings against the Receiver, and the Debtors and their estates. (Receivership Order ¶¶ 8-12).

26.     The Receivership Order also grants the Receiver a charge (the "Receiver's Charge") on all the Debtors' current and future assets, undertakings, and properties of every nature or kind whatsoever, and wherever located, including all proceeds thereof (collectively, the "Property") to secure payment of the reasonable fees and expenses of the Receiver and its counsel.  (Receivership Order ¶ 19).  The Receiver's Charge shall not exceed the aggregate amount of CAD $1,000,000 and shall form a first charge on the Property in priority to all security interests, trusts, deemed trusts, liens, charges, and encumbrances in favor of any person, subject to certain statutory exceptions under the BIA. *Id.*

27.     The Receivership Order further authorizes the Receiver to borrow, by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable, provided that the outstanding principal amount does not exceed CAD $5,000,000.00 (or such greater amount as the Canadian Court may by further order authorize) on the terms authorized therein. (Receivership Order ¶ 22).

28.     The Receivership Order includes a request by the Canadian Court for "aid and recognition of any court . . . having jurisdiction in Canada or in any foreign jurisdiction to give effect to [the Receivership Order] and to assist the Receiver and its agents in carrying out the terms of [the Receivership Order]." (Receivership Order ¶ 31).

29.     The Receiver shall continue to operate the Debtors' business, including collection of all outstanding receivables and preservation of estate assets, for the benefit of the creditors pending sale of the assets or some other disposition of the Canadian Proceeding.

**E.     Sale and Investment Process**

30.     As a term of the Third Amending Agreement to the Forbearance Agreement (dated May 22, 2025), the Debtors were required to conduct a sale and investment solicitation process (the "Pre-Receivership SISP"). The retained deal advisory firm made outreach to 187 parties in connection with the Pre-Receivership SISP. The only expressions of interest received proposed terms that fell significantly short of repaying the Syndicate's indebtedness.

31.     Following entry of the Receivership Order, the Receiver is authorized to market and sell all or any of the Property, with or without further court approval depending on the transaction value. (Receivership Order ¶ 4(l)).

32.     The Receiver anticipates conducting a further sale process for the Debtors' assets, which may include substantially all of the assets of the Energera Group marketed as a going concern or on a divisional or piecemeal basis. The Receiver believes that chapter 15 recognition is necessary to protect and preserve the Debtors' assets and going-concern enterprise, to domesticate the Receivership Order for all purposes, including to effectuate control of the U.S. Accounts, to stay pending and any future litigation to preserve the Debtors' limited resources, and to successfully conduct a sale process with respect to the Debtors' substantial U.S. assets and operations.

### V.     BASIS FOR RECOGNITION UNDER BANKRUPTCY CODE

33.     Chapter 15 of the Bankruptcy Code is designed to promote cooperation and comity between courts in the United States and foreign courts and to protect and maximize the value of debtor assets. Consistent with these principles, the Receiver, as proposed foreign representative,

commenced this ancillary proceeding for the Debtors under chapter 15 of the Bankruptcy Code to obtain recognition of the Canadian Proceeding, specifically including the Receivership Order, and certain relief consistent with Canadian law and protections afforded by the Bankruptcy Code. The Receiver believes that this chapter 15 case will complement the Debtors' primary proceeding in Canada to ensure the effective and economic administration of the Debtors' estates and prevent parties from taking action in the United States that would jeopardize these efforts.

A.     **The Debtors are Eligible for Chapter 15 Relief**

34.     The Debtors are each eligible to be a debtor in a chapter 15 proceeding. Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title." 11 U.S.C. § 109(a).  Section 103(a)(1) of the Bankruptcy Code makes section 109 thereof applicable in chapter 15 cases, and courts have applied section 109(a) of the Bankruptcy Code to determine chapter 15 eligibility.  11 U.S.C. § 103(a)(1); *see, e.g., Drawbridge Special Opportunities Fund LP v. Barnett (In re Barnett)*, 737 F.3d 238, 247 (2d Cir. 2013).

35.     Each of the Debtors satisfies section 109(a) of the Bankruptcy Code. Energera is a Canadian corporation which owns assets that are leased to Energera America and deployed across the United States, holds certain intercompany claims against its U.S. subsidiary Debtors, and has retained Houston-based counsel (and paid a retainer thereto) for the benefit of the Debtors. Energera America is a Delaware corporation that controls two of the U.S. Accounts; has property interests in equipment and vehicles in the United States; and conducts business in Alaska, Colorado, Louisiana, New Mexico, North Dakota, Pennsylvania, Ohio, Texas, Wyoming and other states. Sandtinel is a Delaware limited liability company that owns equipment and operates in Colorado, New Mexico, North Dakota, Texas, and Wyoming. Energera America and Sandtinel are

wholly-owned subsidiaries of Energera, and each of the Debtors are the subject of the Receivership

Order and under the control of the Receiver in accordance with Canadian law.

**B.      Canadian Proceeding Qualifies for Recognition Under Chapter 15**

36.      Section 1517(a) of the Bankruptcy Code provides that, after notice and hearing, a

court shall enter an order recognizing a foreign proceeding as a foreign main (or nonmain)

proceeding if (1) such foreign proceeding is a foreign main (or nonmain) proceeding within the

meaning of section 1502 of the Bankruptcy Code; (2) the foreign representative applying for

recognition is a person or body; and (3) the petition meets the requirements of section 1515 of the

Bankruptcy Code. *See* 11 U.S.C. § 1517(a). The Canadian Proceeding, the Foreign Representative,

and the Petition satisfy each of the foregoing requirements.

(1)      ***Canadian Proceeding is a Pending Foreign Main or, in the Alternative, Nonmain Proceeding***

**a.   *Canadian Proceeding is a Foreign Proceeding***

37.      Section 101(23) of the Bankruptcy Code defines "foreign proceeding" as:

A collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

38.      The Canadian Proceeding satisfies the definition of "foreign proceeding."

The affairs of the Debtors are "under a law relating to insolvency" through the BIA, and "subject

to control or supervision by a foreign court, for the purpose of reorganization or liquidation"

through the appointment of the court-appointed Receiver and through the anticipated sale process.

14

39.     The BIA is one of two pieces of federal legislation in Canada applicable to bankruptcies and insolvencies.[2]   The BIA governs both voluntary and involuntary bankruptcy liquidations and provides for debtor reorganizations.

40.     The BIA also authorizes the appointment of a court-appointed receiver upon a secured creditor's application.   BIA at § 243(1).   Such court-appointed receivers are given a mandate and specific powers as set out in the order appointing the receiver.   These duties typically include: (a) taking possession and control of the property and assets of the debtor; (b) marketing and selling such property and assets in a commercially reasonable manner (whether as a going concern, en-bloc, or otherwise) and under the supervision and approval of the appointing court; and (c) distributing the proceeds of such sales to the stakeholders in accordance with the legal entitlement.   The appointing court has broad discretion to authorize the receiver to "take any other action that the court considers advisable." *Id*. at § 243(1)(c).

41.     Under the BIA, a court-appointed receiver is a "national" receiver, with the ability to administer assets in each of Canada's ten (10) provinces and three (3) territories, typically without further order of provincial courts.   The BIA and its related legislation, the CCAA, are federal legislation.   Provincial legislative jurisdiction governs property and civil rights, potentially affecting some insolvency-related matters, similar to the interplay between state and federal law in the United States.   The BIA provides a statutory framework for a court-appointed receiver to carry out its mandate on a national basis without reliance on the various provincial statutes or courts for its authority.

---

[2] The second federal legislation in Canada concerning insolvencies is the *Companies' Creditors Arrangement Act*, which affords financially troubled corporations the opportunity to restructure their financial affairs through a "Plan of Arrangement." *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (Can.).  The CCAA process is akin to chapter 11 of the Bankruptcy Code, affording companies an opportunity to restructure operations rather than liquidate. *See In re Fracmaster, Ltd.*, 237 B.R. 627, 629 n.3 (Bankr. E.D. Tex. 1999).

42.     United States courts, specifically including this Court, have regularly recognized cases filed under Canada's federal bankruptcy and insolvency statutes as "foreign proceedings." *See, e.g., In re Flo-Back Equipment Inc.*, No. 24-90059, ECF No. 30 (Bankr. S.D. Tex. March 18, 2024); *In re BOS Solutions LTD.*, No. 20-32465, ECF No. 41 (Bankr. S.D. Tex. May 19, 2020); *In re Technicolor S.A.*, No. 20-33113, ECF No. 59 (Bankr. S.D. Tex. July 31, 2020); *In re Entrec Corp., et al.*, No. 20-32643, ECF No. 36 (Bankr. S.D. Tex. May 29, 2020)*; In re Calmena Energy Servs. Inc.*, No 15-30786, ECF No. 17 (Bankr. S.D. Tex. March 5, 2015) (recognizing Canadian BIA receivership proceeding as foreign proceeding).

43.     Accordingly, the Canadian Proceeding qualifies as a "foreign proceeding."

### b. *Canadian Proceeding is a Foreign Main Proceeding*

44.     A foreign proceeding shall be recognized as a "foreign main proceeding" if it is pending in the country where the *center of main interest* ("COMI") exists.  11 U.S.C. § 1517(b). Courts have developed five non-exhaustive factors in the determining a debtor's COMI: (1) the location of those who actually manage the debtor; (2) the location of the debtor's headquarters; (3) the location of the debtor's primary assets; (4) the location of the majority of the debtor's creditors or the majority of creditors affected by the case; and (5) the jurisdiction whose law would apply to most disputes.  *See Lavie v. Ran* (*In re Ran*), 607 F.3d 1017, 1023 (5th Cir. 2010) (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)).

45.     The first factor is commonly referred to as the "nerve center" or "principal place of business" test.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (nerve center is where the corporation's high level officers direct, control, and coordinate the corporation's activities).

46.     Canada is the Energera Group's nerve center because the Debtors' principal management resided and currently resides[3] in Canada prior to the appointment of the Receiver.[4] And, importantly, all of the Debtors are now controlled by the Receiver, which is located in Canada. *In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 222 (Bankr. S.D.N.Y. 2017) (activities of foreign liquidators and administrators can be relevant to a COMI analysis); *see also In re Betcorp Ltd.*, 400 B.R. 266, 292 (Bankr. D. Nev. 2009) (in making COMI determination, the location of those that manage the debtor – the liquidators that had displaced management – found to be an important factor); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) ("[T]he court may consider the location of the debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI."). As set forth in the Receivership Order, the Receiver is authorized and empowered "to manage, operate and carry on the business of the [Debtors]." (Receivership Order ¶ 4(c)). The Receiver submits that the first factor establishes Canada as the Debtors' COMI.

47.     The remaining factors also, on balance, support a finding that Canada is the Debtors' COMI. The Debtors' senior secured debt obligations—representing the vast majority of the Debtors' outstanding obligations—are owed to a Syndicate consisting entirely of Canadian financial institutions and are governed by Canadian law. The Debtors' parent company is a Canadian company. The Energera Group's global headquarters and approximately half of its workforce are located in Alberta, Canada.[5]

---

[3] The Debtors' CEO resigned on March 19, 2025, two days following entry of the Receivership Order. Substantially all of the Debtors' other management continues to be employed.

[4] The Debtors have two members of senior management that reside in the United States, namely their Vice President, Sales, and Vice President, US Operations.

[5] The Receiver contends that the nerve center of the collective Debtors is unquestionably in Canada – in addition to significant operations in Canada by Energera, the U.S.-based debtors are controlled by their parent company and depend on equipment, management, and other resources owned and supplied by Energera. The Receiver nonetheless recognizes that Energera America and Sandtinel maintain an office of offices in the US.

48.     Accordingly, the Receiver respectfully contends that the facts support a finding that the Canadian Proceeding is a foreign main proceeding with respect to the Debtors.  *See In re Gandi Innovations Holdings, LLC, et. al.*, 2009 WL 2916908, at *2 (Bankr. W.D. Tex. 2009) (finding COMI for Texas incorporated entity was in Canada because "nerve center" for Canadian debtor group was in Canada).

### c.   Alternatively, the Canadian Proceeding is a Foreign Nonmain Proceeding

49.     If this Court concludes that the Canadian Proceeding is not a foreign main proceeding, the Canadian Proceeding should be recognized as a foreign nonmain proceeding pursuant to section 1502(5) of the Bankruptcy Code.

50.     A "foreign nonmain proceeding" is defined as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." *See* 11 U.S.C. § 1502(5); *see also* 11 U.S.C. § 1517(b)(2) (providing that an order of recognition as a "foreign nonmain proceeding" shall be entered "if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending"). An establishment is "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).  "Nontransitory economic activity" is not defined in the Bankruptcy Code, but has been referred to as 'a local place of business.'" *See In re Creative Fin. Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y 2016) (holding that in order to have an establishment in a country a debtor must "conduct business in that country"); *see also In re Ran*, 607 F.3d 1017, 1027 (5th Cir. 2010) (holding that the definition of establishment requires "a place from which economic activities are exercised on the market (i.e. externally), whether the said activities are commercial, industrial or professional"); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y 2007) (holding that the

18

requirements of a "place of operations" from which "economic activity" is conducted require a seat for local business activity that has a local effect on the markets).

51.     When it is apparent that an entity conducts operations in the country where a foreign proceeding is pending, courts will recognize the proceeding as a foreign nonmain proceeding if foreign main proceeding recognition is denied.  *See, e.g., In re SPhinX*, 351 B.R. at 122.

52.     Based upon the facts set forth above, each of the Debtors have an undeniable "establishment" in Canada, and, therefore, the Receiver submits that recognition as a foreign nonmain proceeding is, at a minimum, warranted.

(5)     ***Receiver is a "Foreign Representative"***

53.     Section 1517 of the Bankruptcy Code requires that a qualifying "foreign representative" apply for recognition of the foreign proceeding.  Section 101(24) of the Bankruptcy Code defines "foreign representative" as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

54.     The Receiver may serve as the "foreign representative" because it constitutes a "person or body."  "Person" is defined under section 101(41) of the Bankruptcy Code to include an individual, partnership or corporation. 11 U.S.C. § 101(41).  Because the Receiver is a Canadian corporation, it qualifies as a "person" and can accordingly serve as a "foreign representative." The Receiver has been specifically authorized in the Canadian Proceeding to act as the Debtors' foreign representative.   (Receivership Order ¶ 31).   Additionally, the Receivership Order specifically states, "[t]he Receiver is at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of

this Order and for assistance in carrying out the terms of this Order . . . ." (Receivership Order ¶ 32).

55.     Therefore, the Receiver is a foreign representative and the Court may presume as such.  *See* 11 U.S.C. § 1516(b).  Additionally, courts have previously considered a receiver appointed pursuant to section 243(1) of the BIA to be a duly authorized "foreign representative." *See, e.g., In re Flo-Back Equipment Inc.*, No. 24-90059, ECF No. 30 (Bankr. S.D. Tex. March 18, 2024); *In re BOS Solutions LTD.*, No. 20-32465, ECF No. 41 (Bankr. S.D. Tex. May 19, 2020); *In re Baronet U.S.A. Inc.*, No. 07-13821, ECF No. 15 (Bankr.  S.D.N.Y. Jan. 1, 2008).

(6)     ***The Receivership Order Satisfies Section 1515***

56.     A petition for recognition shall be accompanied by any of the following:

(1)     A certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2)     A certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3)     In the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

57.     In compliance with section 1515(b) of the Bankruptcy Code, a certified copy of the Receivership Order from the Canadian Proceeding, which may be presumed authentic, is attached hereto as Exhibit 1. 11 U.S.C. § 1516(b).

58.     For these reasons, (a) the Canadian Proceeding is a foreign main or, in the alternative, nonmain proceeding; (b) the Receiver is a foreign representative; and (c) the Petition meets the requirements of section 1515 of the Bankruptcy Code.  Accordingly, the requirements for recognition of the Canadian Proceeding are satisfied.

20

## VI.    BASIS FOR RELIEF UPON RECOGNITION

59.    To support the Receiver's efforts to efficiently maximize value for creditors through the anticipated sale process, the Receiver requests an order confirming the automatic relief granted upon recognition of a foreign proceeding and additional, discretionary relief under section 1521 of the Bankruptcy Code.

**B.    Automatic Relief Afforded in a Foreign Main Proceeding**

60.    The Bankruptcy Code provides as a matter of right, upon recognition of a foreign proceeding as a "foreign main proceeding" the following:

(1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;

(2) sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;

(3) unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and

(4) section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520(a).

61.    Accordingly, pursuant to section 1520(a) of the Bankruptcy Code, the Receiver seeks entry of an order confirming applications of the delineated provisions of the Bankruptcy Code, including but not limited to the automatic stay provision of Bankruptcy Code section 362.

**C.    Automatic Relief Afforded Whether or Not a Foreign Proceeding is Main**

62.    Certain additional relief is automatic upon recognition of a foreign proceeding, whether main or nonmain.  Upon recognition of a foreign proceeding, the foreign representative may intervene in any proceedings in a State or Federal court in the United States in which the debtor is a party.  11 U.S.C. § 1524.  Upon recognition of a foreign proceeding, the foreign representative has standing in a case concerning the debtor pending under another chapter of this

21

title to initiate actions under sections 522, 544, 545, 547, 548, 550, 553, and 724(a) of the Bankruptcy Code. 11 U.S.C. § 1523(a). Accordingly, the Receiver seeks relief to the fullest extent available pursuant to sections 1523(a) and 1524 of the Bankruptcy Code.

**D.**     **Discretionary Relief Whether or Not a Foreign Proceeding is Main**

63.     Certain discretionary relief is also available upon recognition of a foreign proceeding under section 1521 of the Bankruptcy Code. The court may grant relief under section 1521 of the Bankruptcy Code "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). The Receiver contends that the discretionary relief requested, as described below, is necessary (to the extent not already granted by section 1520(a) of the Bankruptcy Code) for the benefit and protection of the Debtors, creditors, and parties-in-interest.

64.     "Any appropriate" discretionary relief is available upon recognition of a foreign proceeding, whether or not main. 11 U.S.C. § 1521(a). In granting relief under section 1521 of the Bankruptcy Code to a representative of a foreign nonmain proceeding, the court must be satisfied that the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding. 11 U.S.C. § 1521(c). That relief includes:

(1)     Staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);

(2)     Staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);

(3)     Suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);

(4)     providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities;

(5)     entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the

22

foreign representative or another person, including an examiner, authorized by the court;

(6)     extending relief granted under section 1519(a); and

(7)     granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a).

65.     In addition, under section 1521(b) of the Bankruptcy Code, upon recognition of a foreign proceeding, whether main or nonmain, the court may entrust the distribution of all or part of the Debtors' assets located in the United States to the Foreign Representative, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected.  The Receiver seeks all relief available pursuant to section 1521(a) of the Bankruptcy Code in order to carry out its responsibilities described in the Receivership Order.

**E.     To the Extent Applicable, the Receiver's Requests Qualify for Injunctive Relief**

66.     Pursuant to section 1521(e) of the Bankruptcy Code, for relief granted pursuant to Bankruptcy Code sections 1521(a)(1) (concerning staying of proceedings); (a)(2) (concerning staying execution against the debtor's assets); (a)(3) (concerning suspending the right to transfer, encumber or otherwise dispose of any assets); and 1521(a)(6) (concerning extending relief granted under section 1519(a)), the "standards, procedures, and limitations applicable to an injunction shall apply."

67.     As an initial matter, the Receiver contends that the injunctive standards need not be satisfied because equivalent relief should be granted as a matter of right pursuant to section 1520(a) of the Bankruptcy Code.  However, to the extent relevant, the standards are satisfied.

68.     The factors for injunctive relief as stated in *Vitro, S.A.B. de C.V. v. ACP Master, Ltd. et al. (In re Vitro S.A.B. de C.V.)*, 455 B. R. 571, 580 (Bankr. N.D. Tex. 2011), are discussed below.

(1)     ***A substantial likelihood of success on the merits***

69.     In the event the Canadian Proceeding is recognized as a foreign nonmain proceeding, the Receiver also submits that there is a substantial likelihood that the Court will determine that the relief requested in the Proposed Order is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Debtors or the interests of the Debtors' creditors pursuant to section 1521(a) of the Bankruptcy Code.

70.     Discretionary relief under section 1521 of the Bankruptcy Code is routinely granted upon recognition of a foreign proceeding.  For instance, courts commonly approve stays,[6] approve debtor-in-possession financing,[7] and apply section 365 of the Bankruptcy Code.[8]  Furthermore, a grant of discretionary relief under section 1521 of the Bankruptcy Code would promote uniformity in the administration and disposition of the Debtors' assets and would be consistent with the policies underlying the Bankruptcy Code.  *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985) (stating that "promoting uniformity in bankruptcy administration" is a goal of bankruptcy adjudication, in the context of a motion to withdraw the reference); *see also In re Vitro S.A.*, 701 F.3d 1031, 1044 (5th Cir. 2012) (stating that "one of Chapter 15's goals [is] the furtherance of cooperation between domestic and foreign courts in cross-border insolvency cases").   Accordingly, the Receiver submits that the requested discretionary relief under section 1521 of the Bankruptcy Code has a substantial likelihood of being granted. *See, e.g., In re*

---

[6] *See, e.g., In re BOS Solutions LTD.*, No. 20-32465, ECF No. 41 (Bankr. S.D. Tex. May 19, 2020); *In re Technicolor S.A.*, No. 20-33113, ECF No. 59 (Bankr. S.D. Tex. July 31, 2020); *In re Entrec Corporation, et al.*, No. 20-32643, ECF No. 36 (Bankr. S.D. Tex. May 29, 2020). S*ee also In re Calmena Energy Svcs. Inc.*, No. 15-30786 (Bankr. S.D. Tex. Mar. 5, 2015), ECF No. 17.
[7] *See, e.g., In re Essar Steel Algoma Inc.*, No. 15-12271 (Bankr. D. Del. Dec. 2, 2015), ECF No. 100; *In re Crystallex Int'l Corp.*, No. 11-14074 (Bankr. D. Del. Apr. 26, 2012), ECF No. 111; *In re Biltrite Rubber (1984) Inc.*, No. 09-31423 (Bankr. N.D. Ohio Apr. 2, 2009), ECF No. 58; *In re Rock Well Petroleum Inc.*, No. 08-20802 (Bankr. D. Wy. Feb. 9, 2009), ECF No. 70.
[8] *See, e.g., Essar Steel Algoma*, No. 15-12271 (Bankr. D. Del. Dec. 2, 2015), ECF No. 100; *In re Newsat Ltd.*, No. 15-10810 (Bankr. D. Del. May 29, 2015), ECF No. 113; *In re Qimonda AG*, No. 09-14766 (Bankr. E.D. Va. Nov. 19, 2009), ECF No. 180.

*Rede Energia S.A.*, 515 B.R. 69, 91-92 (Bankr. S.D.N.Y. 2014) ("Chapter 15 thus provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity.").

(2)   ***A substantial threat of irreparable injury if protections are not ordered***

71.   To the extent necessary to effectuate and complete its duties set forth in the Receivership Order, the Receiver continues to operate the Debtors' business. Without relief recognizing the Receiver's authority in the United States per the Receivership Order, including the staying of pending and potential future actions, the Receiver may be frustrated from fully performing its duties, and the value of the Debtors' assets could be jeopardized. *See, e.g., In re Netia Holdings S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It is well established . . . that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."); *In re MMG, LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors.").

72.   To permit the Receiver to fulfill its obligations to the Debtors' Canadian estates, the Receivership Order provides for substantially similar powers and protections pursuant to Canadian law as those afforded to a chapter 7 trustee under the Bankruptcy Code. Among others, the stay of all collection activities akin to Bankruptcy Code section 362, and the grant of specific authority for the Receiver to seek international recognition of the Receivership Order provide the Receiver with vital powers to maximize value for all rightful creditors.

73.   Without recognition and enforcement of the Receivership Order to the fullest extent permitted by chapter 15 of the Bankruptcy Code, the Receiver will be unable to fully discharge its duties to all creditors.

25

(3)      ***The threatened injury to the movant outweighs any damage might caused to the opponent by section 1521 relief***

74.      Any threatened injury to the Debtors outweighs any damage section 1521 relief might cause to opponents.  The requested relief, if granted, would benefit the Debtor's creditors, as a whole, by ensuring an orderly liquidation and distribution of assets by and through the Canadian Proceeding, including the contemplated sales. *See, e.g., In re Basis Yield Alpha Fund (Master)*, Case No. 07-12762 (Bankr. S.D.N.Y. 2007), Dkt. No. 5 (stating that failing to issue a restraining order against creditors could, *inter alia*, "undermine the Foreign Representative's efforts to achieve an equitable result for the benefit of all of the Foreign Debtor's creditors"). Moreover, the Debtors' creditors and interested parties will receive proper notice and have the ability to participate in the Canadian Proceeding—or, as applicable, this proceeding—to protect any rights they may have with respect to the Debtors.

(4)      ***Section 1521 relief will not disserve the public interest***

75.      Finally, the requested relief will not disserve the public interest.  To the contrary, granting the relief serves the public interest by facilitating a cross-border process that will provide a benefit to all rightful creditors of the Debtors.  *See, e.g., Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

76.      For the above stated reasons, the relief sought is necessary and appropriate, in the interest of the public and international comity, consistent with United States public policy, and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting the requested relief.  In the event that the Court finds that the Canadian Proceeding is a foreign

nonmain proceeding, the relief requested herein is still appropriate because the relief may be, and should be, granted in the discretion of the Court.[9]

77.    Accordingly, to the extent necessary, the Receiver submits that the Court should exercise its discretion in this matter to assure an economical, expeditious, and equitable administration of the Debtors' estates consistent with the Receivership Order.  Without such relief, the Debtors will be exposed to the risk and costs of litigation and other actions against them, which is in violation of the stay provided in the Receivership Order, in contravention of the Receiver fulfilling its duties under applicable Canadian law, and thus threatens the Receiver's efforts to maximize value for the benefit of creditors.

**E.     Additional Relief Under Section 1521(a)(7) is Appropriate**

78.    Section 1521(a)(7) provides that, with certain exceptions, the Court may grant any additional relief that may be available to a trustee. 11 U.S.C. § 1521(a)(7). This provision does not require the application of injunction standards. 11 U.S.C. § 1521(e). The Debtors are parties to numerous executory contracts and unexpired leases, some of which may contain bankruptcy or insolvency ipso facto clauses. If counterparties to these agreements can unilaterally terminate or modify those agreements, the Receiver's ability to administer the Canadian Estates, including the assets and liabilities located in the United States, could be severely jeopardized. Pursuant to § 1521(a)(7), the Receiver requests that this Court order that subsection 365(e) of the Bankruptcy Code shall apply with respect to the termination or modification of any executory contracts or unexpired leases of the Debtors. Such relief is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Debtors or the interests of the creditors. *See* 11 U.S.C. § 1521(a).

---

[9] Courts have found that it is not required that an adversary proceeding be filed and served on all parties in interest in order to obtain injunctive relief available under chapter 15. *See, e.g., In re Ho Seok Lee*, 348 B.R. 799, 801 (Bankr. W.D. Wash. 2006) (adversary proceeding not required for chapter 15 injunctive relief).

79. In addition, the Debtors require the continued use of the U.S. Accounts to facilitate the Canadian Proceedings. Accordingly, the Debtors request an order authorizing HSBC to continue to deliver service and administer the U.S. Accounts in the ordinary course at the direction of the Receiver.

## VII. WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(C)

80. Bankruptcy Rule 7065 expressly provides that "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)." To the extent rule 65 of the Federal Rules of Civil Procedure applies, the Receiver believes that the security requirements imposed by rule 65(c) are unwarranted under the circumstances and requests a waiver of such requirements pursuant to Bankruptcy Rule 7065.

## VIII. CONCLUSION

81. For the reasons stated herein, and as set forth in the Supporting Declarations, the Receiver respectfully requests that this Court recognize the Canadian Proceeding as a foreign main proceeding, and grant the relief requested herein, or, in the alternative, requests recognition as a foreign nonmain proceeding, and that the Court grant the relief requested herein.

Dated: March 30, 2026.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

*/s/ John D. Cornwell*
John D. Cornwell
Texas Bar No. 24050450
Alexander R. Perez
Texas Bar No. 24074879
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: (713) 222-1470
Facsimile: (713) 222-1475
jcornwell@munsch.com
arperez@munsch.com

***Counsel for Alvarez & Marsal Canada Inc., Solely in its Capacity as Court-Appointed Receiver and Manager of the Debtors***

## VERIFICATION OF PETITION

I, Orest Konowalchuk, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am the authorized foreign representative for Alvarez & Marsal Canada Inc., the court-appointed receiver and manager (the "Receiver") for the Debtors.  As such, I have full authority to verify the foregoing Petition on behalf of the Receiver for the Debtors.

I have read the foregoing Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 30, 2026.

*Alvarez & Marsal Canada Inc., Solely in its Capacity as Court-Appointed Receiver and Manager of the Debtors*


By:   _____
    Orest Konowalchuk,
    Senior Vice President

30