**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re:<br><br>ENERGERA, INC. (F/K/A FRAC SHACK INC.),<br><br>Debtor in a Foreign Proceeding. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Chapter 15 Case<br><br>Case No. 26-90433 (ARP)<br><br>(Joint Administration Requested) |
| In re:<br><br>ENERGERA AMERICA INC. (F/K/A FRAC SHACK AMERICA INC.),<br><br>Debtor in a Foreign Proceeding. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Chapter 15 Case<br><br>Case No. 26-90434 (ARP)<br><br>(Joint Administration Requested) |
| In re:<br><br>SANDTINEL LLC,<br><br>Debtor in a Foreign Proceeding. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Chapter 15 Case<br><br>Case No. 26-90435 (ARP)<br><br>(Joint Administration Requested) |

**DECLARATION OF OREST KONOWALCHUK IN SUPPORT OF RECEIVER'S
(A) VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN PROCEEDING,
(II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND
(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE,
AND (B) EMERGENCY MOTION FOR PROVISIONAL RELIEF
PURSUANT TO THE BANKRUPTCY CODE SECTION 1519**

I, Orest Konowalchuk, do hereby declare as follows:

1.      I am over the age of 18, and I am authorized to submit this declaration

(the "Declaration") on behalf of the Receiver (as defined below).

2.	I am a Senior Vice President in the North American Commercial Restructuring group at Alvarez & Marsal Canada Inc. ("Receiver" or "Foreign Representative"), a Canadian corporation.  I hold a Bachelor of Commerce (hons.) from the University of Manitoba and a diploma in business administration from Red River College. I am a Chartered Professional Accountant, a Chartered Insolvency and Restructuring Professional, and a Canadian Licensed Insolvency Trustee.  I have acted for businesses in financial distress in the private and public sectors and have worked on engagements involving cross-border operations, including concurrent Companies' Creditors Arrangement Act (CCAA) and chapter 11/chapter 15 filings. In my role as a restructuring and insolvency professional, I have more than twenty (20) years of experience specializing in the energy sector, including exploration and production, oilsands and oilfield services, commercial and residential real estate and property development, construction, manufacturing and agricultural industries.  I am a member of the Insolvency Institute of Canada, the Canadian Association of Insolvency and Restructuring Professionals, and the Northwest Chapter of the Turnaround Management Association.  My office is located at: Bow Valley Square IV, Suite 1110, 250 6th Avenue SW, Calgary, AB T2P 3H7 Canada.

3.	The Receiver is the court-appointed receiver, manager, and authorized foreign representative of Energera, Inc. (formerly known as Frac Shack, Inc.) ("Energera"); Energera America Inc. (formerly known as Frac Shack America Inc.) ("Energera America"); and Sandtinel LLC ("Sandtinel," and collectively with Energera and Energera America, the "Debtors") pursuant to the *Consent Receivership Order* dated and pronounced on March 17, 2026 (the "Receivership Order")[1] was entered by the Court of King's Bench of Alberta in Judicial Centre of Edmonton,

---

[1] A certified copy of the Receivership Order is attached to the Verified Petition as **Exhibit 1** and can also be downloaded free of charge at Alvarez & Marsal Canada Inc.'s website: https://www.alvarezandmarsal.com/Energera and is incorporated herein for all purposes. Energera International Inc. (formerly known as Frac Shack International

Alberta, Canada, Court File No. 2603-02889 (the "Canadian Court" and the "Canadian Proceeding"), pending under Canada's *Bankruptcy and Insolvency Act* ("BIA").

4.      I am the individual primarily responsible for overseeing Alvarez & Marsal Canada Inc.'s engagement in its capacity as Receiver, and I am duly authorized to submit this Declaration on behalf of the Receiver.

5.      Acting as the representative of the Receiver, I am not an employee, senior management nor an owner of the Debtors and the knowledge I gained regarding the Debtors is a result of the role I was appointed to by the Canadian Court to act as an officer of the Canadian Court. Specifically, acting on behalf of the Receiver, I have investigated the business and affairs of the Debtors to the best of my ability since my engagement on this matter and make this Declaration based on that investigation.  All facts set forth in this Declaration are based upon my personal knowledge; my review of relevant documents; information provided to me by employees of Alvarez & Marsal Canada Inc. working under my direction or supervision; my discussions with current or former representatives and/or agents of the Debtors; and/or my opinions based upon my experience concerning the Debtors' operations and financial condition. If called to testify, I could and would testify competently and to the best of my ability as stated herein.

6.      I submit this Declaration in support of the *Verified Petition for (I) Recognition of Foreign Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition")[2] and *Foreign Representative's Emergency Motion for Provisional Relief Pursuant to Bankruptcy Code Section 1519* (the "Provisional Relief Motion").

---

Inc.) ("Energera International") is a Canadian entity that is also part of the Canadian Proceeding and subject to the Receivership Order.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Verified Petition.

7.      I have reviewed the Verified Petition and the Provisional Relief Motion, and believe the factual assertions therein are true and correct, and to the best of my knowledge the relief requested therein is appropriate and necessary for the Receiver to fully and efficiently perform its duties under the Receivership Order.  I further declare as follows:

## I.      BACKGROUND

### A.      The Debtor's Business

8.      Debtors, along with affiliate Energera International, are members of an integrated, multinational energy technology group (collectively, the "Energera Group"). Energera is a corporation incorporated under the laws of the Province of Alberta and is the parent company of the Energera Group. The Energera Group's corporate structure is as follows:

(a)      Energera America is a Delaware corporation that serves as the primary holding entity for the Energera Group's United States operations. Energera America is registered to carry on operations in approximately 13 U.S. states. Energera America is a direct, wholly-owned subsidiary of Energera and a Borrower under the Credit Agreement.

(b)      Sandtinel is a Delaware limited liability company that is 100% owned by Energera America. Sandtinel is registered to carry on operations in approximately 6 U.S. states. Sandtinel is a guarantor under the Credit Agreement.

(c)      Energera also holds a controlling 51% equity interest in Frac Shack Sociedad Por Acciones Simplificada, an Argentine entity that is structurally excluded from the definition of "Loan Party" under the Credit Agreement. This entity is not part of these chapter 15 proceedings.

(d)      Energera International is federally incorporated under the laws of Canada and is extra-provincially registered in Alberta and British Columbia. Energera International is a direct, wholly-owned subsidiary of Energera and a Borrower under the Credit Agreement (defined below).

(e)      Sand Separation Technologies Inc. (formerly known as 2233423 Alberta Ltd.), an Alberta corporation that was previously a 100% owned subsidiary of Energera and a co-borrower under prior credit agreements, was dissolved effective December 31, 2024, as part of a corporate streamlining initiative. As such, it is also not part of these chapter 15 proceedings.

9.      The Energera Group's core operations include the provision of automated, self-contained, and self-sufficient fuel delivery systems for hydraulic fracturing and the separation of solids from produced liquids with reduced methane emissions relative to competitors. The Energera Group's business comprises two principal operating divisions:

(a)      The Frac Shack Division provides automated hydraulic fracturing fueling solutions that support diesel, bi-fuel, and natural gas-powered frac fleets. These modular, self-contained, and fully mobile units facilitate the transition from traditional fuel sources to natural gas, significantly improving safety and environmental performance during pressure pumping operations.

(b)      The Sandtinel Division focuses on advanced non-cyclonic flowback sand separation and monitoring technologies. Its patented vessels are engineered to eliminate produced sand as wells are brought online, protecting downstream equipment, reducing downtime, and significantly reducing methane emissions during flowback.

10.      The Energera Group's operations are highly integrated and managed centrally from its global headquarters located in Spruce Grove, Alberta. The Group maintains active operations and assets across Alberta, British Columbia, Texas, Alaska, Colorado, Wyoming, Ohio, Pennsylvania, North Dakota, Louisiana, New Mexico, Utah, West Virginia, Oklahoma, and Argentina.

11.     For the foreseeable future, the Receiver intends to maintain the going-concern Energera Group business and thus has retained substantially all of the Debtors' more than 100 employees (of which approximately half are based in Alberta) to continue operations and assist with the Receivership proceedings and sale process, described further below.

12.     The Debtors' assets in the United States include specialized oilfield equipment supporting the Frac Shack and Sandtinel divisions. If not currently deployed to customer sites, the Debtors' United States assets are generally held at leased storage areas or yards in Pennsylvania, Texas, and Wyoming, among other locations. Certain assets are currently held for refurbishment and repair with a vendor in Monahans, Texas.

**B.     The Debtors' Creditors**

13.     Energera, Energera International, and Energera America (collectively, the "Borrowers") are the borrowers, and Sandtinel is a guarantor, under a Third Amended and Restated Credit Agreement dated June 28, 2024, as subsequently amended by a First Amending Agreement dated September 27, 2024 (as amended, the "Credit Agreement"). The Syndicate currently consists of RBC (as Agent), National Bank of Canada, ATB Financial, and Export Development Canada.

14.     Pursuant to the Credit Agreement, the Syndicate made available: (a) a syndicated non-revolving term credit facility in the maximum principal amount of CAD $49,700,000, and (b) an operating facility in the maximum principal amount of CAD $7,500,000, with RBC as the sole operating lender. Both facilities were scheduled to mature on September 27, 2026.

15.     To secure the obligations under the Credit Agreement, the Debtors granted various security interests (collectively, the "Security"), including guarantees, general security agreements, fixed and floating charge demand debentures, debenture pledge agreements, a pledge and security agreement, and a mortgage, assignment of leases and rents, security agreement, financing

6

statement and fixture filing. The security interests were duly registered in the applicable personal property registries in Canada and the United States.

16. As of February 2, 2026, the outstanding indebtedness owing by the Borrowers to the Syndicate under the Credit Agreement was CAD $39,061,058.27, plus accrued and accruing interest, costs, expenses, and other obligations.

17. Based on the Receiver's review, the Receiver understands that the Debtors have approximately seventy-eight (78) unsecured creditors, which generally includes suppliers, utility providers, governmental and taxing authorities, and other vendors, with unpaid trade balances totaling approximately $498,334 as of March 23, 2026.

18. This total does not include any litigation claims against the Debtors that are presently unliquidated. Other litigations are ongoing as well, and a list of the known litigation involving the Debtors is attached to the Verified Petition as **Exhibit 2**.

**C.      The Receiver**

19. The Receiver is a corporation formed under the laws of Canada pursuant to the Canada Business Corporations Act and consented to act as Receiver for the Debtors on February 9, 2026.  The Consent Receivership Order was agreed to by the Debtors on May 22, 2025, but was pronounced and came into effect on March 17, 2026.

**D.      Debtors' U.S. Bank Accounts and Intercompany Transactions**

20. Insofar as is known to the Receiver, the Debtors maintain four operating bank accounts (two maintained by Energera America, one by Sandtinel and one by Energera) (collectively, the "U.S. Accounts") at HSBC Bank USA NA ("HSBC") in the United States. The Receiver needs to ensure and retain access to the U.S. Accounts because, among other reasons, receivables from Energera America (and Sandtinel) are being deposited in the account during the Debtors' transition into Receivership.  In the ordinary course of business, the Debtors engage in

intercompany transactions with other members of Energera Group, and the Debtors' sources and uses of cash are directly or indirectly dependent upon the operations of the Energera Group. Moreover, without control of the account, it is conceivable that unauthorized withdrawal of funds by the Debtors' former CEO may occur, although no such withdrawal has been threatened or is anticipated.

**E.        The Canadian Receivership Proceeding**

21.        On March 17, 2026, the Canadian Court pronounced and made effective the Receivership Order pursuant to section 243(1) of the BIA and the Receivership Order was entered on March 18, 2026.  Entry of the Receivership Order was the result of the Canadian Court's determination that a BIA receivership was more appropriate than a CCAA proceeding. In reaching this determination, Justice Feasby found, among other things, that (a) the Syndicate had been patient with the Debtors, having entered into a Forbearance Agreement that was amended five times over the course of approximately one year; (b) the Debtors had already been given the opportunity to run a sales and investment solicitation process during the forbearance period, which contacted 187 parties but failed to generate an offer sufficient to repay the Syndicate's indebtedness; (c) as a condition of the Third Amending Agreement to the Forbearance Agreement, the Debtors had executed a Consent Receivership Order and agreed not to oppose a receivership application; and (d) the additional costs of a CCAA proceeding were not justified where the Syndicate appeared to be the only stakeholder with a significant economic interest.

22.        The Receivership Order was entered with the consent of Energera (then under control of its former CEO) following the termination of the stay in a competing application for relief filed by Energera under the *Companies' Creditors Arrangement Act* (Canada).

23.        The Receivership Order appointed the Receiver over the estates of the Debtors.  (Receivership Order ¶ 3).  The Receivership Order specifically authorizes the Receiver

to act "as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada." (Receivership Order ¶ 32).  It empowers and authorizes the Receiver to take various steps involving the property of the Debtors subject to the Canadian Proceeding. (Receivership Order ¶ 4).  The Receivership Order grants the Receiver access to, *inter alia*, all of the Debtors' books, records, contracts, and information. (Receivership Order ¶¶ 5-7).  Additionally, the Receivership Order imposes a stay of initiation or continuation of proceedings against the Receiver, and the Debtors and their estates. (Receivership Order ¶¶ 8-12).

24.     The Receivership Order also grants the Receiver a charge (the "Receiver's Charge") on all the Debtors' current and future assets, undertakings, and properties of every nature or kind whatsoever, and wherever located, including all proceeds thereof (collectively, the "Property") to secure payment of the reasonable fees and expenses of the Receiver and its counsel.  (Receivership Order ¶ 19).  The Receiver's Charge shall not exceed the aggregate amount of CAD $1,000,000 and shall form a first charge on the Property in priority to all security interests, trusts, deemed trusts, liens, charges, and encumbrances in favor of any person, subject to certain statutory exceptions under the BIA. *Id.*

25.     The Receivership Order further authorizes the Receiver to borrow, by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable, provided that the outstanding principal amount does not exceed CAD $5,000,000.00 (or such greater amount as the Canadian Court may by further order authorize) on the terms authorized therein. (Receivership Order ¶ 22).

26.     The Receivership Order includes a request by the Canadian Court for "aid and recognition of any court . . . having jurisdiction in Canada or in any foreign jurisdiction to give

effect to [the Receivership Order] and to assist the Receiver and its agents in carrying out the terms of [the Receivership Order]." (Receivership Order ¶ 31).

27.     The Receiver shall continue to operate the Debtors' business, including collection of all outstanding receivables and preservation of Canadian estate assets, for the benefit of the creditors pending sale of the assets or some other disposition of the Canadian Proceeding.

**F.     Sale and Investment Process and Surplus Asset Sale**

28.     As a term of the Third Amending Agreement to the Forbearance Agreement (dated May 22, 2025), the Debtors were required to conduct a sale and investment solicitation process (the "Pre-Receivership SISP"). The retained deal advisory firm made outreach to 187 parties in connection with the Pre-Receivership SISP. The only expressions of interest received proposed terms that fell significantly short of repaying the Syndicate's indebtedness

29.     Following entry of the Receivership Order, the Receiver is authorized to market and sell all or any of the Property, with or without further court approval depending on the transaction value. (Receivership Order ¶ 4(l)).

30.     The Receiver anticipates conducting a further sale process for the Debtors' assets, which may include substantially all of the assets of the Energera Group marketed as a going concern or on a divisional or piecemeal basis. The Receiver believes that chapter 15 recognition is necessary to protect and preserve the Debtors' assets and going-concern enterprise, to domesticate the Receivership Order for all purposes, including to effectuate control of the U.S. Accounts, to stay pending and any future litigation to preserve the Debtors' limited resources, and to successfully conduct a sale process with respect to the Debtors' substantial U.S. assets and operations.

10

**G.      The Chapter 15 Case and Support for Recognition**

31.      As Foreign Representative, pursuant to the Receivership Order, the Receiver has caused to be filed Official Form 401 chapter 15 petitions for the Debtors, the Verified Petition, the Provisional Relief Motion, and certain other related filings.  The Receiver seeks recognition of the Canadian Proceeding and, specifically, the Receivership Order, as a foreign main proceeding or, in the alternative, as a foreign non-main proceeding as defined in chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").

32.      Pursuant to the Receivership Order, the Receiver is the foreign representative of the Debtors and is specifically authorized to act as the Debtors' representative for the purpose of having the Canadian Proceeding recognized in a jurisdiction outside of Canada, including the United States.

33.      To the best of my knowledge and for the reasons stated in the Verified Petition, I believe that the Canadian Proceeding is a foreign main proceeding as defined under section 1502(4) of the Bankruptcy Code.  If the Court disagrees, I believe that the Canadian Proceeding is a foreign non-main proceeding as defined under section 1502(5) of the Bankruptcy Code.

34.      Energera is a Canadian corporation that owns assets that are leased to Energera America and deployed across the United States, holds certain intercompany claims against its U.S. subsidiary Debtors, and has retained Houston-based counsel (and paid a retainer thereto) for the benefit of the Debtors. Energera America is a Delaware corporation that controls two of the U.S. Accounts; has property interests in equipment and vehicles in the United States; and conducts business in Alaska, Colorado, Louisiana, New Mexico, North Dakota, Pennsylvania, Ohio, Texas, Wyoming and other states. Sandtinel is a Delaware limited liability company that owns equipment and operates in Colorado, New Mexico, North Dakota, Texas, and Wyoming. Energera America

and Sandtinel are wholly-owned subsidiaries of Energera, and each of the Debtors are the subject of the Receivership Order and under the control of the Receiver in accordance with Canadian law.

35.    The Energera Group's "nerve center" is located in Canada, because the Debtors' principal management resided and currently resides[3] in Canada prior to the appointment of the Receiver.[4]  The Debtors' senior secured debt obligations—representing the vast majority of the Debtors' outstanding obligations—are owed to a Syndicate consisting entirely of Canadian financial institutions and are governed by Canadian law. The Debtors' parent company is a Canadian company. The Energera Group's global headquarters and approximately half of its workforce are located in Alberta, Canada. The U.S.-based Debtors are controlled by their parent company and depend on equipment, management, and other resources owned and supplied by Energera.

### H.    Support for the Provisional Relief Motion

36.    Pending recognition of the Canadian Proceeding, the Receiver requests provisional relief pursuant to section 1519 of the Bankruptcy Code to, among other things, enjoin any collection efforts against the assets of the Debtors and to protect the Debtors' assets in the United States for the benefit of all stakeholders. To the best of my knowledge, I understand that relief granted pursuant to section 1519 of the Bankruptcy Code requires satisfaction of the standards for injunctive relief, which, as shown below, are satisfied.

### (1)    *A substantial likelihood of success on the merits*

37.    For the reasons set forth above, in the Verified Petition and in the Provisional Relief Motion, the Receiver submits that it is likely to prevail in obtaining recognition of the Canadian

---

[3] The Debtors' CEO resigned on March 19, 2025, two days following entry of the Receivership Order.  Substantially all of the Debtors' other management continues to be employed.

[4] The Debtors have two members of senior management that reside in the United States, namely their Vice President, Sales, and Vice President, US Operations.

Proceeding.  The Canadian Proceeding is a valid proceeding pending pursuant to the BIA that should be recognized pursuant to chapter 15 of the Bankruptcy Code.  As I understand the concept, the center of main interests ("COMI") of the Debtors are located in Canada for the reasons discussed above.  The Receiver has been performing its duties for more than one (1) week, and has made substantial progress in its efforts for the benefit of the Debtors' entire creditor body.

40.     Accordingly, there is a substantial likelihood that the Canadian Proceeding and, specifically, the Receivership Order will be recognized pursuant to chapter 15 of the Bankruptcy Code; and, respectfully, should be recognized as a foreign main proceeding based on my understanding of chapter 15 and similar recognitions of receivership actions pending under the BIA.

39.     If the Court does not find that the Canadian Proceeding is a foreign main proceeding, the Receiver submits that the facts underlying this chapter 15 proceeding support a finding that the Debtor has an establishment in Canada within the meaning of section 1502(2) of the Bankruptcy Code, and thus there is a substantial likelihood that the Court will recognize the Canadian Proceeding as a foreign non-main proceeding.  In the event the Canadian Proceeding is recognized as a foreign non-main proceeding, the Receiver also submits that there is a substantial likelihood that the Court will determine that the relief requested is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Debtor or the interests of the Debtor's creditors pursuant to sections 1519 and 1521 of the Bankruptcy Code.

40.     I do not anticipate that there will be any opposition to recognition of the Canadian Proceeding from the primary constituents of the Canadian estates.

**(2)     *A substantial threat of irreparable injury if the provisional relief is not granted***

41.     To the extent necessary to effectuate and complete its duties set forth in the Receivership Order, the Receiver continues to operate the Debtors' business.  Without provisional

13

relief recognizing the Receiver's authority in the United States per the Receivership Order, including the staying of pending and potential future actions, the Receiver may be frustrated from fully performing its duties, and the value of the Debtors' assets could be jeopardized.

42.     Absent provisional relief, the Debtors face the real risk that parties within the territorial jurisdiction of the United States may decide to exercise control over the Debtors' assets or pursue, and then enforce, a judgment against the Debtors and/or its assets. Such actions would circumvent, and interfere with, the administration of the Canadian Proceeding and the value-maximizing sale process that the Debtors intend to pursue therein.

43.     By way of example, the Receiver needs to ensure and retain access to the U.S. Accounts because, among other reasons, receivables from Energera America (and Sandtinel) are being deposited in the account during the Debtors' transition into receivership, as the Receiver continues to operate the Debtors business in the United States.  In the ordinary course of business, the Debtors engage in intercompany transactions with other members of Energera Group, and the Debtors' sources and uses of cash are directly or indirectly dependent upon the operations of the Energera Group.

44.     By letter dated March 23, 2026, HSBC indicated that the bank will not provide the Receiver access to the U.S. Accounts pursuant to the Receivership Order absent domestication, and, as such, there is an urgent and present need for provisional relief under section 1519 of the Bankruptcy Code to protect the Debtors' assets—specifically, the funds held in the U.S. Accounts—from dissipation or unauthorized transfer pending the Court's ruling on recognition of the Verified Petition.

45.     Additionally, in an ongoing employment litigation styled *Ricky St. Julien v. Energera America, Inc. F/K/A Frac Shack America, Inc.*, 4:25-cv-01827 (S.D. Tex. filed

14

March 14, 2025) (the "St. Julien Litigation"), a deposition of Energera America's corporate representative is currently scheduled for April 2, 2026, at which the recently departed former CEO of the Energera Group was to be deposed. Significant preparation and coordination with counsel will be required for a new corporate representative to be ready for the deposition on a compressed schedule. Further, litigation counsel for Energera America is also currently set to take the deposition of the plaintiff on April 1, 2026, in the St. Julien Litigation. To preserve the Debtors' limited resources and to keep their management and the Receiver focused on the receivership tasks and going concern sale, provisional relief is needed to implement the stay of the St. Julien Litigation so that the Debtors' management and the Receiver can remain focused on the receivership tasks and sales processes. Other litigations are ongoing as well, and a list of the known litigation involving the Debtors is attached to the Verified Petition as **Exhibit 2**.

46.     Also, because the Receiver is actively operating the Energera Group, immediate recognition of the Receivership Order will stabilize efforts to retain all or substantially all of the U.S. employees, transact with U.S. vendors, and engage with U.S. creditors and other interested parties.

47.     Without recognition and enforcement of the Receivership Order to the fullest extent permitted by chapter 15 of the Bankruptcy Code, I believe the Receiver will be unable to fully discharge its duties to all creditors and stakeholders.

**(3)     _That the threatened injury to the movant outweighs any damage the provisional relief might cause to the opponent_**

48.     I respectfully believe that any threatened injury to the Debtors outweighs any damage the injunction might cause to any potential opponents.  The requested Bankruptcy Code section 1521 relief, if granted, would benefit the Debtor's creditors, as a whole, by ensuring an orderly liquidation and distribution of assets by and through the Canadian Proceeding, including

the contemplated sales. Moreover, the Debtors' creditors and interested parties will receive proper notice and have the ability to participate in the Canadian Proceeding—or, as applicable, this proceeding—to protect any rights they may have with respect to the Debtors.

**(4)** *<u>That the provisional relief will not disserve the public interest</u>*

49.    Finally, I submit that the requested relief will not disserve the public interest. To the contrary, granting the relief serves the public interest by facilitating a cross-border process that will provide a benefit to all rightful creditors of the Debtors.

50.    For the above stated reasons and to the best of my knowledge, I respectfully submit that the relief sought is necessary and appropriate, in the interest of the public and international comity, and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting the requested relief. In the event that the Court finds that the Canadian Proceeding is a foreign nonmain proceeding, the relief requested herein is still appropriate and should be granted in the discretion of the Court.

51.    Without such relief, the Debtors will be exposed to the risk and costs of litigation and other actions against them, which is in violation of the stay provided in the Receivership Order, in contravention of the Receiver fulfilling its duties under applicable Canadian law, and thus threatens the Receiver's efforts to stabilize the Debtors operations and maximize value for the benefit of creditors.

**(5)** *<u>Additional Relief is Appropriate</u>*

52.    The Debtors are parties to numerous executory contracts and unexpired leases, some of which may contain bankruptcy or insolvency ipso facto clauses. If counterparties to these agreements can unilaterally terminate or modify those agreements, the Receiver's ability to administer the Canadian estates, including the assets and liabilities located in the United States, could be severely jeopardized. Pursuant to § 1521(a)(7), the Receiver requests that this Court order

16

that subsection 365(e) of the Bankruptcy Code shall apply with respect to the termination or modification of any executory contracts or unexpired leases of the Debtors. I submit such relief is necessary to effectuate the purpose of Chapter 15 and to protect the assets of the Debtors or the interests of the creditors.

[Remainer of page intentionally left blank.]

Docusign Envelope ID: 33FB6E05-2979-8D36-8029-2A298367EAD2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted this 30th day of March, 2026.

*Alvarez & Marsal Canada Inc., in its capacity as court-appointed Receiver of Debtors, and not in its personal or corporate capacity*

DocuSigned by:

*Orest Konowalchuk*

F93F0A3394CC426...

Orest Konowalchuk

17